NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL KEMPF, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 06-CV-1935 (DMC) |
| TARGET CORPORATION, NC HOLDINGS and/or NORMARK CORPORATION, "ABC COMPANY 1-5" and "DEF COMPANY 1-5", (both being fictitious designations), | |
| Defendants. | |

| |
|---|
| TARGET STORES, A DIVISION OF TARGET CORPORATION, |
| Third Party Plaintiff, |
| v. |
| NORMARK CORPORATION, |
| Third Party Defendant. |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motions for summary judgment pursuant to FED. R. CIV. P. 56 by Defendants Target Corporation ("Target") and NC Holdings, Inc. and Normark Corporation (collectively, with NC Holdings, Inc., "Normark"). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the Parties, and based upon

the following, it is the finding of this Court that Target's motion for summary judgment is **denied in part** and **granted in part**; and Normark's motion for summary judgment is **denied**.

I.    **BACKGROUND**[1]

Plaintiff Paul Kempf alleges that, on July 6, 2004, while looking through a fishing display in a Target store located in Edgewater, New Jersey, Plaintiff's right palm became hooked by a fishing lure which was removed from its box. The lure was eventually identified as a Rapala "LC Long-Casting Minnow" lure, which is designed, manufactured, packaged and distributed by Normark. According to Plaintiff, there was no packaging anywhere in the vicinity. Plaintiff reported the incident to Target personnel, who, at Plaintiff's request, called an ambulance. Plaintiff was taken to the Emergency Room at Palisades Medical Center in North Bergen, New Jersey. The lure was removed and Plaintiff was discharged.

On or about March 3, 2006, Plaintiff filed a Complaint against Target, alleging that on July 6, 2004, Plaintiff was injured on Target's premises. Target subsequently filed a third-party Complaint against Normark. On April 27, 2006, Plaintiff filed an amended Complaint against Target and Normark. Plaintiff alleged that Normark negligently designed, manufactured, assembled and otherwise placed a hazardous product into the stream of commerce.

Target now moves for summary judgment against Plaintiff on the grounds that it did not have actual or constructive notice of the alleged dangerous condition and that Plaintiff's product liability should be dismissed because Target is an "innocent product seller" pursuant to N.J.S.A. 2A:58C-9. Additionally, Normark moves for summary judgment against Plaintiff on the grounds that Plaintiff failed to establish a *prima facie* case against Normark. Finally, Target seeks

---

[1] The facts set forth in this Opinion are taken from the undisputed facts set forth in the parties' FED. R. CIV. P. 56.1 statements in their respective moving papers.

summary judgment against Normark because Target is indemnified by Normark pursuant to an agreement between Normark and Target, entered into on August 13, 2003, and referred to as the Partners Online Agreement ("POL Agreement").  Target argues that the indemnification clause contained in the POL Agreement demonstrates Normark's intention to indemnify Target for its own negligence.

## II.     STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  See id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  However, "[i]n determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J.

2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

## III. DISCUSSION

### A. BOTH MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF BY CO-DEFENDANTS TARGET AND NORMARK, RESPECTIVELY, MUST BE DENIED

After carefully reviewing the submissions by all of the Parties, this Court finds that there are significant issues of material fact, which preclude the grant of summary judgment against Plaintiff.

#### 1. DEFENDANT TARGET'S MOTION FOR SUMMARY JUDGMENT

Target's motion for summary judgment is denied because there are disputed issues of material fact, thereby precluding the grant of summary judgment. A question of fact exists regarding whether Target had constructive knowledge of the alleged dangerous condition. Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation. See Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993). The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition and to avoid creating conditions that would render the premises unsafe. See O'Shea v. K. Mart Corp., 304 N.J. Super. 489, 492-93 (App. Div. 1997). "Ordinarily an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." Nisivoccia v. Glass Gardens, 175 N.J. 559, 563 (2003). Constructive knowledge refers to notice that a particular condition existed for such a length of time as reasonably to have resulted in knowledge of the condition,

had the owner/occupier been reasonably diligent.  <u>See</u> <u>Parmenter v. Jarvis Drug Store, Inc.</u>, 48 N.J Super. 507, 510 (App. Div. 1957).  Here, the alleged defect in the lure's packaging or design existed for such a period of time that Target had constructive knowledge or the alleged defect.

Target argues that there is no evidence to indicate that Target had constructive knowledge of the alleged defective condition.  Target provides that Plaintiff has not deposed any Target personnel.  Furthermore, Target alleges that photographs of the display where the lure was allegedly located, which were taken immediately after Plaintiff reported the incident, did not reveal anything out of place.  Although this argument may act to strengthen Target's position that they lacked constructive notice of the defect, it only goes to the weight of the evidence.  Even if accepted as true, this argument does not dispose of the issue whether Target had constructive notice of the alleged defective condition.  That remains a question of fact to be determined by a jury.

Target's second basis for summary judgment, that it is a "product seller" and, therefore, not liable because it has identified the product manufacturer, is equally unavailing. In New Jersey:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. §§ 2A:58C-2 (2007).  Not only are manufacturers strictly liable for product defects, but "all subsequent parties in the chain of distribution, are strictly liable for damages caused by

defectively designed products." Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394 (1982). A product seller, however, can be relieved of all strict liability claims upon the filing of an affidavit identifying the manufacturer of the product which allegedly caused the injury. See N.J.S.A. §§ 2A:58C-9(b). A product seller can still be held liable under N.J.S.A. §§ 2A:58C-9(d), which provides:

> A product seller shall be liable if: (2) The product seller knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death or damage.

N.J.S.A. § 2A:58C-9(d). Essentially, if Target had actual or constructive notice of a defect in the product, it can no longer claim to be merely an innocent product seller. There exists a genuine issue of material fact whether Target had constructive notice of the alleged defect, which precludes the grant of summary judgment.

### 2. NORMARK'S MOTION FOR SUMMARY JUDGMENT

Normark's motion for summary judgment is denied because there are disputed issues of material fact, thereby precluding the grant of summary judgment. Normark's first basis why summary judgment should be granted is that Plaintiff failed to establish a *prima facie* case for strict liability. Under the doctrine of strict liability, manufacturers –like Normark– are liable for damages if the product left their hands in such a defective condition that it rendered the product dangerous for its intended use and it proximately caused Plaintiff's injury. See Corbin v. Camden Coca-Cola Bottling Co., 60 N.J. 425, 431 (1972). "[A] plaintiff in a strict liability case must establish that the product was defective, that the defect arose while in the control of the defendant, and that the plaintiff suffered injury thereby." Scanlon v. Gen. Motors Corp., Chevrolet Motor Div., 65 N.J. 582, 590 (1974). There exists sufficient evidence to establish that the lure or the lure's package was defective and that defect may have occurred while it was in

Normark's control.  Therefore, because there are issues of material fact which create a question for a jury, summary judgment must be denied.

Normark's second basis for summary judgment is that Plaintiff failed to establish the elements of a negligence claim.  "Negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to other."  Rappaport v. Nicols, 31 N.J. 188, 201 (1959).  There exists a dispute in material fact whether Normark acted reasonably in packaging and shipping the lure.  Therefore, Normark's motion for summary judgment is denied.

Normark's third basis for summary judgment that, no evidence exists to demonstrate a design defect because there was no expert testimony that the packaging was defective, is equally unavailing.  One of the basic requirements for the admission of expert witness testimony is that the intended testimony must concern a subject matter that is beyond the understanding of the jury.  See State of N.J. v. Walter Townsend, 186 N.J. 473, 491 (2006). Plaintiff correctly argues that, while under many circumstances, an expert is needed to testify to demonstrate the existence of a design defect, it is not always necessary.   Because the facts at issue and the theory of liability are arguably not beyond the understanding of a jury, expert testimony may not be necessary.

      **B.**    **TARGET'S MOTION FOR SUMMARY JUDGMENT AGAINST NORMARK**

Target's motion for summary judgment against Normark is granted with respect to the indemnification contract because the clear and unequivocal language of the indemnification clause provided in the POL Agreement between Normark and Target demonstrates that it was the intent of the parties that such indemnification would occur without regard as to the negligence of any party or parties, even if that negligence was solely that of Targets.  A contract of indemnity is construed by applying the customary rules governing the interpretation of contracts.  See Univ. of Mass. Mem'l Med. Ctr., Inc. v. Christodoulou, 360 N.J. Super. 313, 321 (App. Div. 2003).

"Where no ambiguity exists in a contract it is the duty of the court, as a matter of law, to interpret the same." Korb v. Spray Beach Hotel Co., 24 N.J. Super. 151, 155 (App. Div. 1955) (citations omitted). "[W]here the parties have said, by very plain words, what they meant, the court has no duty to perform other than to carry their meaning into effect." Id. "A contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." Ramos v. Browning Ferris Indus., Inc., 103 N.J. 177, 191-92 (1986) (citing Longi v. Raymond-Commerce Corp., 34 N.J. Super. 593, 603 (App. Div. 1955)). The POL agreement provides, in pertinent part, that:

> Vendor [Normark] shall defend, indemnify and hold harmless Purchaser [Target], its parent, affiliates, agents and employees, from and against any and all liability, claims, suits, actions, losses and expenses, including costs and attorney fees, relating to or arising out of any claim or demand of any kind or nature, which any buyer or user of the Goods, or any other person (including employees or agents of Vendor), whether in privity to Purchaser or not, may make against Purchaser, based upon or arising out of the manufacture, delivery, ticketing, labeling, packaging, placement, promotion, sale or use of the goods.

(O'Hara Cert., ¶11, Exhibit I) (emphasis added). Here, Plaintiff alleged that the packaging, which contained the Rapala lure at issue, was defective. Plaintiff further alleged that the packaging was not sufficient to contain the lure, rendering the package not reasonably fit for its intended or reasonably foreseeable purpose. It is clear that the indemnification clause was designed to hold Target harmless for any claim or demand of any kind or nature which arises from, *inter alia*, the lure's packaging. Additionally, the indemnification clause goes on to provide that:

> It is the intent of the parties hereto that all indemnity obligations be without limit, without regard as to whether or not Purchaser furnishes specifications or inspects the Goods, and without regard as to the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive.

Id. (emphasis added). The plain language of this clause demonstrates clearly and unequivocally that it was the parties' intent that Normark would indemnify Target even if the negligence was solely that of Target's.

Normark, in its opposition brief, provided that the indemnification clause, which it claims was drafted by Target, was ambiguous and, therefore, should be strictly construed against Target. In support of this claim, Normark argues that, had the parties intended Normark to indemnify Target for its sole negligence, it would have phrased the clause to state: "Normark shall indemnify Target for its own negligence." While Normark's phrasing of the clause would achieve a clearer understanding of the intent of the parties, the clause as it was provided in the POL Agreement is sufficient to establish the necessary standard of clearly and unequivocally expressing Normark's intent to indemnify Target, even for Target's own negligence.

## IV.  CONCLUSION

For the reasons stated, it is the finding of this Court that Target's motion for summary judgment be **denied in part** and **granted in part**; and Normark's motion for summary judgment is **denied**.  An appropriate Order accompanies this Opinion.

                                                                       S/ Dennis M. Cavanaugh
                                                                       Dennis M. Cavanaugh, U.S.D.J.

Date:         January    31   , 2008
Orig.:        Clerk
cc:           All Counsel of Record
              Hon. Mark Falk, U.S.M.J.
              File